2018-2271, Sanders versus Yonko. Mr. Powers, please proceed. Good morning, Your Honor. May it please the Court. Robert Powers on behalf of Appellant Heather Sanders. We have a very interesting case, I believe, today where the appellee has seen a lost interest in the case, as well as any purported rights it might have in a very similar and unique mark. Both parties represent an interest or had represented an interest and a stylized mark, which is unique on its face. But again, we have an interesting case where the appellee is no longer present in the case and the government has intervened in the case. The air that we believe occurred in the below court was twofold. One, that the wrong standard of law or standard of review was applied to a Rule 60B motion to set aside default judgment in the case by the board saying that extraordinary circumstances are required in such a circumstance, as well as being very analogous to the Information Systems Network Corp. v. U.S. case 994-F2D-792, which ruled that in light of a meritorious defense and lack of prejudice to the government, the court abused its discretion, refusing to set aside the default judgment for excusable neglect, which we believe in appellant reviews that this is a case of excusable neglect. It is negligence on its face. There's five points I want to touch on. There's another part of the Trademark Board decision where they pointed to Rule 60C, which said that a Rule 60B motion must be made within a reasonable time. Obviously, it has to be made within a year of the judgment, but nevertheless, it has to be made within a reasonable time. Your 60B motion was made six months after the default judgment, and the Trademark Board concluded that amount of time was too long. Outside of the excusable neglect question, there's this additional question of why was it wrong for the Trademark Board to conclude that waiting six months was not reasonable? I'm glad you brought that up, Your Honor. As an initial matter, if you look at Appendix 7, when the Board starts to begin discussing about the reasonable time period, the standard that they set in place is a relief from judgment under Federal Rule 60B is an extraordinary remedy to be granted discretionarily only in exceptional circumstances. That was in between when they began discussing about is it a reasonable time period. There is no court that we're aware of that sets forth what a quote-unquote reasonable period of time is. That's why it's in quotations in the motion to set aside judgment originally. In the intervener's brief itself, when it discusses a reasonable time, it cites secondary law, secondary sources. There is no case precedent that is cited. There's no binding authority that's cited. In the reply brief, the appellant appears that there's periods of eight months that have been sufficient to conclude it's a reasonable time. Irrespective of that argument, the circumstances in this case are that the appellant really had no knowledge of the opposition to a much later point in time, and that is something I'd like to clarify in this case. I believe your client said she knew about the default judgment in late May. Is that right? That is not right, Your Honor, and that is a clarification that I did want to discuss. I know it's mentioned in the footnote of the intervener's brief. Well, it's mentioned the board makes that finding. Well, the actual characterization, Your Honor, is that she had no knowledge before May 17th. That's the time that the judgment was entered. It was not that she knew about it on May 17th. She learned about it before she retained new counsel, I take it. She learned about that her application was abandoned. That's the nuance here is that she only knew. She's not a sophisticated party as far as trademark rules or regulations. There's no intent by her to violate any regulations. She acted diligently in this case by retaining new counsel. She hired her second counsel as another transactional attorney. The only thing that she knew for certain that is in the record is that her trademark application had been abandoned. She didn't understand the rationale behind it, and there's no affirmation that she understood that there was a notice of opposition proceeding. Only that her application was abandoned, so she hired another transactional trademark attorney to then refile her trademark application. Had she understood, it's very clear at that point, and with the large sum of money she's now spent to get to this point, that she would have hired a litigation attorney more than likely if she knew that, had some idea that an opposition proceeding had gone on. As a layperson, she received a postcard in the mail that her trademark application had been abandoned, so she hired a new attorney to file another trademark application. That's one of the points of clarity on page 7 of Intervenor's Brief, footnote 12, where they say that the compellant became aware of the opposition proceeding. There's nothing in the record to suggest that she became aware of the proceeding, just that she became aware of the application being abandoned. That is a mission that is clearly in place. Moreover, as far as the lack of record... Are you suggesting that the notice that was sent to her lawyer should not suffice as notice sent to her, even in a case where she maybe didn't get it from the lawyer? I'm not saying that it cannot suffice as notice, Your Honor, whether it be counsel or her considering notice, but then that goes into the information systems case where there was notice provided. There was no willful doing on her behalf to violate any court rule that would then prohibit her from claiming excusable neglect in this case. Notice occurred in informational systems and networks courts. That's the analogy. Maybe, if I'm remembering the facts wrong, please clarify them for me, but it's my recollection that notice was sent to her attorney of record and that she alleges that she did not receive that notice from him and that he was not going to continue to represent her in, for example, the opposition proceeding. Is that right? There's a little bit of disconnect there, Your Honor. I think that we're not getting the full story from prior counsel. Frankly, I don't think we ever will, since there's an accusation by appellant to her prior counsel for some malfeasance, and so we don't believe that an attorney is going to make a statement one way or the other. But to identify, I mean, clearly, I think that if he's attorney of record, there's no way that we could say that he did not receive, likely, notice from the board of the opposition proceeding. What we're saying is that the appellant is saying that she actually never received the notice when it was sent to that counsel. A third party had allegedly received it, and I say allegedly because that's, again, it's hearsay. You're talking about Barber now? I'm talking about Barber now, yes. Well, you have a declaration in the record from Barber. Sure. I don't understand what you're saying when you're saying he allegedly received something. He's saying, so I think we have actually in the affidavit, Your Honor, it says in around February 2017, Mr. Morales allegedly sent me a copy of the notice of opposition. Because of personal matters attributable to my health, I was physically unable to inform Ms. Sanders about the opposition or provide her a copy of the opposition. I mean, to me, that sounds like he is acknowledging that he received it, and he is also proclaiming that due to some health problem, unspecified health problem, he wasn't able to transmit that information to his friend Ms. Sanders. Again, Your Honor, there is ambiguity. And then he doesn't talk about the other notices. I mean, there was a show cause order on March 30, 2017. There was the actual default judgment May 18, 2017. He doesn't explain in his declaration whether or not he received those notices from the attorney. And was there some reason or no reason for why he failed to transmit that information on to Ms. Sanders? Your Honor, that is an ambiguity that's present. We were only able to gather limited information from Mr. Barber regarding his participation as far as the prosecution of the application. But isn't the burden on you to establish not only the reasonableness of the overall delay in filing the 60B motion, but ultimately why the failure to, or the inaction to permit this thing to go to a default judgment was due to neglect that was excusable? It is, but it's on behalf of the applicant, Your Honor, not third parties that are unrelated to the application. And so as far as the actual applicant, she acted with diligence in this case. Well, but she didn't know because she says that the representation by her attorney ended when the notice for opposition was filed. But she didn't notify the PTO of that. She didn't notify the PTO that the attorney no longer represented her. So when they sent him a notice of abandonment, why doesn't that fall on her fault-wise in terms of whether there's an excusable delay or neglect here? Why she had an obligation to notify the office if her counsel changed and she didn't. Just like if she moved, if she moved, right? And they sent it to her old address and there was a delay in having it forwarded to her. Why isn't she responsible? She says her attorney ceased to represent her, but she never notified the office of that. So they sent all of these notices to that old attorney. You're absolutely right, Your Honor. She is responsible, but that's the neglect standard. She did assume a duty over her application at that point. Well, the question isn't just is it neglect, is it willful. There is a level of willful neglect. There was no intent. The information case looks at intent. She had no intent. So you were saying that she didn't know about the opposition against her own first trademark application until when? We're unsure when that date was. Because at 8337, her affidavit at paragraph 7 says she discovered the existence of the opposition after notice from the PTO that her trademark application had become abandoned. And then paragraph 8, I immediately retained the legal services of another attorney, Mr. Alan Grant. So I read paragraph 7 as saying that she knew about the opposition once she received the notice that her application had become abandoned. So that would be in May because obviously the new application by Mr. Grant was filed when? June 1. So that's a clarification, Your Honor. What's a clarification? The clarification is that she knew that her trademark application had been abandoned, but not the causation of that item. Until after and much later. We couldn't pinpoint an exact date after May when she determined that there was an opposition. So when she says she discovered the existence of the opposition against her trademark application? After. On paragraph 7, when her application had become abandoned, that wasn't right? Well, Your Honor, the key term is after. At an after point of May 17th. That was only to illustrate that after the default judgment had been entered. It was not a specified date. The key term is after. So then when did she, if you're telling me paragraph 7 doesn't say what it says, then when did she discover that there was once upon a time an actual opposition and went to default judgment against her initial trademark application? We don't have an exact date, Your Honor, but we believe it's during the period of time when her secondary counsel filed an extension of time to oppose the application of a PELI that proceeded through the, published on the Official Gazette at that time. Sometime in between July and August. Okay, Mr. Powers, you're into your rebuttal time. Would you like to save the remainder? Yes, please. Okay. Mr. Casagrande, please proceed. Thank you, Your Honors. May it please the Court. Looking at the affidavit from Ms. Sanders and the two paragraphs that Judge Chen was just talking about, paragraph 7 says, I discovered the existence of the opposition after receiving notice from the PTO that the trademark had become abandoned. The notice itself of abandonment refers to proceedings at the Trademark Trial and Appeal Board. So I don't think these two paragraphs can be read to kind of escape the June 2nd filing of the second application, which she immediately did after receiving that notice. So I think the only reasonable inference from that is that that's when she got notice of the proceeding. And then there are a period, going to Judge Chen's questions about the reasonableness of the time, there's a period in June, July, August, September, and October, and then to the middle of November, with no explanation of why there was any reason why they didn't file the motion to reopen the case during that period of time. There's zero explanation of that. There really was no basis for the Board to find that it was filed, as is a burden to show, within a reasonable time. And so for that reason alone, that requires affirmance under the abuse of discretion standard here. The second thing is there are a lot of gaps. I'm not sure exactly whether – I don't think that the Barber affidavit is really relevant because he's not the client. So it's almost like that's sort of a sideshow because it never really gets tied to either the duty of Mr. Morales as the attorney or what Ms. Sanders did. So I view that as something that really doesn't play on this at all. Do we have an affidavit from the initial attorney, Mr. Morales, who represented Ms. Sanders during the initial trademark application? No, and that's a very big hole in the case because under Pioneer, the Supreme Court's 93 case, we're looking not just at what Ms. Sanders did. It's not a pro se kind of a thing where there's no lawyer involved. Once a lawyer is involved, you're looking also at the actions, inactions, and circumstances surrounding what the lawyer did and didn't do. And there is absolutely nothing here to show that Mr. Morales was diligent at all. We don't know why he didn't answer the notice of opposition. We don't know why he didn't answer the notice of default. We don't know why he didn't immediately move to set aside the judgment of default. There's nothing here to show either that what he did was neglect because it's not just you have to show willfulness. It also has to be neglect. You say we don't know why, but didn't Ms. Sanders allege that he no longer represented her after the publication of her trademark? That's in her brief. But I don't see why assuming that is true hurts you at all because it was what the board added to the factors it considered in deciding whether her neglect was excusable or not because they said if true, you didn't notify us of change of counsel or firing of your counsel or discontinuation or whatever else, so we kept sending notices to him. Right. It was incumbent upon Mr. Morales to let the board know that he was withdrawing from representing the applicant once it reached whatever point he had agreed with her that his representation would cease, and he did not do that. Well, so if it's incumbent on him to do that, how come the board factored into its decision on A11 her failure to notify the board? Because it's kind of an unusual circumstance that she talked about in her brief that this pertained, and there's not a sworn statement to this effect, but there is a statement in the brief that Mr. Morales had told her that his representation would end once any opposition was filed. And if she knew that, I think as one of the questions earlier pointed out, if she knew that, it was then incumbent upon her in that unusual circumstance to pay attention to what was going on and find out when that point was reached so she would know either A, I have to represent myself now, or B, I need to go and get another attorney to do this part of the process. And there's nothing that explains what she did during that time to fulfill that duty, to kind of monitor that unusual situation with her first attorney. Essentially, there's just not enough here for the board to have found in her favor on either reasonableness or that the neglect was excusable because no real excuse was proffered, just some bare-bones statements of what happened and didn't happen. See, you just undersold your case. You said there's just not enough. What if I don't agree with you? Do I get to reverse? No, I mean there's... No, because it's an abuse of discretion standard, right? It is. So you don't have to argue there's just not enough for the board to have ever found what they found because I can actually disagree with you on whether I think there's enough, but I still have to affirm you nonetheless. That's right. There's nothing... Because the standard of review is abuse of discretion. Right. There's nothing that would indicate that the board abused its discretion here. If there are no further questions, I'll get back... I'm curious about information systems. And one reading of information systems is that we held that an applicant has to be willful in failing to meet certain deadlines in order for the board to conclude that there wasn't excusable neglect. And so almost any form of negligence will be excusable. And the word willful comes up a number of times in information systems. And so why is it that you read information systems differently? I think you have to read information systems in the context of what the claims court held and what that made the issue before this court in that. And basically the claims court had held that once counsel has notice of a particular deadline and fails to do anything, that in itself is willful conduct. And so there was a lot of discussion of what constitutes willful conduct and what doesn't constitute willful conduct, which was a very specific issue in that case. But the broader issue here is not that Rule 60B1 only requires the negation of willful conduct. It also has to be conduct that can be considered neglect and that neglect has to be excused. That really wasn't an issue in information systems because it really was just a simple matter of whether or not that broad willfulness test that the claims court used was correct or not, and it wasn't.  As an issue matter, Your Honor, in rebuttal, that any ambiguity that is to be, or doubt, is to be rendered in favor of the non-defaulting party, or excuse me, the defaulting party, so in this case it would be the applicant. As far as what information to show and not show, the appellant has clearly identified the excusable neglect in this case, whether it be the neglect of counsel, neglect of herself by not moving forward with what she should move forward with by putting herself into the application. Those facts are there. Even if it's a scienter of facts, it's still there. It just requires, as information says, just a minor abuse of discretion to reverse the decision in this case. And going back in information systems, I think one of the key elements here that's been overlooked in our discussion has been the fact of the weight given to the three prongs. Again, as I started off in this oral argument, the fact that there is a meritorious defense, that there is no prejudice to the appellee in this case or the opposing party in the case below, and those two factors have, for some reason, received very little weight. It looks like the entire weight of this case has been on excusable neglect, which we believe that the appellant has clearly showed in this case. There is no willful conduct. It's just not there. The record is devoid of willful conduct. In information systems, even the willful conduct that they're looking at is really based upon a rule, an FRCPA Rule 37 sanction. I mean, a default judgment is a very harsh sanction to receive in the case, especially since most cases should be decided on the merits or honors. And so appellant of yours, that she has brought forth enough information for this court to reverse the judgment of the lower court. Okay. Thank both counsel for their argument. The case is taken under submission.